1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

9

10  RW DISTRIBUTING, INC.,
    a Washington Corporation,

11
                                          COMPLAINT FOR PATENT
    and                                   INFRINGEMENT, UNFAIR
12                                        COMPETITION, INTENTIONAL
    RUSSELL WATERGARDENS FLAGSHIP         INTERFERENCE WITH CONTRACT
13  STORE, INC.,                          AND BUSINESS RELATIONS, AND FOR
    a Washington Corporation,             DECLARATORY JUDGMENT OF
14                                        PATENT NON-INFRINGEMENT,
                  Plaintiff,              INVALIDITY AND
15                                        UNENFORCEABILITY; PATENT
          v.                              MISMARKING, AND FALSE
16                                        ADVERTISING
    WATERFALL POND SUPPLY OF
17  WASHINGTON, INC.
    a Washington Corporation,
18                                        CASE NUMBER:  C10-1626
    and
19
    IRVEN H. TENNYSON, JR.,
20  an Individual,

21                Defendants.

22  _____

COMPLAINT                    1

GRAYBEAL JACKSON LLP
400 - 108ᵀᴴ AVENUE, SUITE 700
BELLEVUE, WASHINGTON 98004-5562
(425) 455-5575

Plaintiffs RW DISTRIBUTING, INC. and RUSSELL WATERGARDENS FLAGSHIP STORE, INC. (collectively referred to hereinafter as "PLANTIFFS" or "RUSSELL WATERGARDENS", unless otherwise noted) allege for their Complaint as follows:

## NATURE OF THE CASE

1.     This is an action for patent infringement arising from DEFENDANTS' unlawful making, using, selling and offering to sell waterfall filter systems and related methods that infringe a United States Patent owned and/or licensed by PLAINTIFFS.   This is also an action for a declaratory judgment that a patent relating to aeration and valve systems for waterfall filters, that DEFENDANTS putatively own and have accused plaintiff of infringing, is not infringed by PLAINTIFFS and/or is invalid and is unenforceable for inequitable conduct.   This is also an action for patent mismarking based on DEFENDANTS' intentional marking of their products with a patent number that clearly does not encompass their products for the purpose of deceiving the public.   This is also an action based on DEFENDANTS' false advertising, and is also an action for Federal and state unfair competition based on DEFENDANTS' business torts based on DEFENDANTS' wrongful interference with PLAINTIFFS' customers and distributors

## JURISDICTION AND VENUE

2.     The Court has jurisdiction under 28 U.S.C. § 1338(a) (patent and Lanham Act), 28 U.S.C. § 1338(b) (related unfair competition), 28 U.S.C. § 1331 (federal question), and the Declaratory Judgment Act, 28 U.S.C. § 2201.

3.     Venue is proper under 28 U.S.C. § 1391 and 28 U.S.C. § 1400(b) because each of

COMPLAINT                     2

DEFENDANTS reside in and/or have a place of business in this district and sell products in and from this district (i.e., each is subject to personal jurisdiction here) and a substantial part of the events or omissions giving rise to the claims and controversy occurred in this district.

## THE PARTIES

4.     Plaintiff RW DISTRIBUTING, INC. ("RW DISTRIBUTING"), is a manufacturer, seller and distributor of watergarden systems including pond and pondless watergardens, and further including waterfall filters for watergardens.

5.     Plaintiff RW DISTRIBUTING is a Washington corporation with a place of business at 16541 Redmond Way, #436-C, Redmond, Washington 98052.

6.     Plaintiff RW DISTRIBUTING is the owner of United States Patent No. 7,425,268 issued September 16, 2008 (hereinafter the "Russell '268 patent"; a true and accurate copy of this patent is Exhibit A hereto).

7.     Plaintiff RUSSELL WATERGARDENS FLAGSHIP STORE, INC. ("RUSSELL WATERGARDENS FLAGSHIP STORE") is a seller and distributor of watergarden systems including pond and pondless watergardens, and further including waterfall filters for watergardens.

8.     Plaintiff RUSSELL WATERGARDENS FLAGSHIP STORE is a Washington corporation with a place of business at 6848 - 180th Ave NE, Redmond, Washington 98052 and has a dba of Russell Watergardens & Koi.

9.     On information and belief, Defendant WATERFALL POND SUPPLY OF WASHINGTON, INC. (hereinafter "WATERFALL POND SUPPLY", unless otherwise noted)

COMPLAINT                    3

GRAYBEAL JACKSON LLP
400 - 108TH AVENUE, SUITE 700
BELLEVUE, WASHINGTON 98004-5562
(425) 455-5575

is a manufacturer, seller and distributor of watergarden systems including pond and pondless watergardens, and further including waterfall filters for watergardens.

10.     On information and belief, Defendant WATERFALL POND SUPPLY is a Washington corporation with a place of business at 20408 Conway Frontage Rd., Mount Vernon, Washington 98273.

11.     On information and belief, Defendant IRVEN H. TENNYSON, JR., (hereinafter "TENNYSON", unless otherwise noted) is an individual that is President of WATERFALL POND SUPPLY and controls many aspects of the business of WATERFALL POND SUPPLY. On information and belief, TENNYSON resides in this judicial district in or about Mt. Vernon, Washington.

12.     On information and belief, TENNYSON is the putative inventor and putative owner of United States Patent No. 7,731,841, issued June 8, 2010 (hereinafter the "Tennyson '841 patent"; a true and accurate copy is Exhibit B hereto).

13.     On information and belief, Tennyson has not assigned the Tennyson '841 patent to any entity.

14.     On information and belief, Tennyson has personally committed one or more of the acts giving rise to the one or more of causes of action herein.

15.     For convenience, certain subject matter headings are provided below.  Such headings are for convenience only and do not constitute allegations of the Complaint.  Further, the facts under such headings are not limited to such headings: facts under one heading can and do relate to and/or support allegations or claims under another heading.

COMPLAINT                4

**FACTUAL BACKGROUND**

A.     PLAINTIFFS' PATENT, THE RUSSELL '268 PATENT

16.     On April 29, 2005, John Russell, an officer of both Plaintiffs RW DISTRIBUTING and RUSSELL WATERGARDENS FLAGSHIP STORE, filed a provisional patent application directed to particular water garden filter devices and methods related thereto.

17.     On January 13, 2006, Mr. Russell filed a non-provisional patent application claiming priority from the provisional application and claiming particular water garden filter devices and methods related thereto.

18.     On September 16, 2008, the United States Patent and Trademark Office duly and legally issued the Russell '268 patent to Mr. Russell.

19.     The Russell '268 patent has been assigned by Mr. Russell to, and is currently owned by, Plaintiff RW DISTRIBUTING.

20.     Plaintiff RW DISTRIBUTING makes, uses, sells and offers for sale watergarden systems including water garden filter devices and methods related thereto covered by the Russell '268 patent, including watergarden filters under the name HYDRO VORTEX$^{TM}$.   HYDRO VORTEX$^{TM}$ watergarden filters are manually backwashable; one option available for such HYDRO VORTEX$^{TM}$ watergarden filters is a back-washable feature using a single valve to redirect waterflow, which option is sold under the name HYDROFLUSH$^{TM}$.

21.     Plaintiff RW DISTRIBUTING has licensed certain rights under the patent to Plaintiff RUSSELL WATERGARDENS FLAGSHIP STORE, including the rights to use, offer for sale and to sell products and methods covered by the Russell '268 patent, and Plaintiff RUSSELL WATERGARDENS FLAGSHIP STORE offers for sale and sells products under such rights,

COMPLAINT                    5

1  including the back-washable water garden filters under the name HYDRO VORTEX<sup>TM</sup>,

2  including with the HYDROFLUSH<sup>TM</sup> option.

3  22.     The independent claims of the Russell '268 patent read as follows:

4          1. A water garden filter device sized and configured for purifying water of a water garden
           or fish pond, the device comprising: a filter medium configured to clean the water
5          flowing through the device; and a housing configured to contain the filter media, and
           including: a wall configured to whirl the water flowing through the device to remove
6          suspended particulates from the flow due to impact of the water with the wall; a trap
           configured to collect the removed particulates, an entrance configured to permit water to
7          flow into the housing, the entrance disposed below the filter media and below the wall
           that is configured to whirl water flowing through the device; and an exit configured to
8          permit water to flow out of the housing, the exit including a ledge configured to generate
           a waterfall from water flowing out of the exit.

9
           13. A system for purifying water of a water garden or fish pond, the system comprising: a
10         pump configured to generate a flow of water; and a water garden filter device configured
           to purify the water and including: a filter medium configured to clean the water flowing
11         through the device; and a housing configured to contain the filter media, and including: a
           wall configured to whirl the water flowing through the device to remove suspended
12         particulates from the flow due to impact of the water with the wall; a trap configured to
           collect the removed particulates, an entrance configured to permit water to flow into the
13         housing, the entrance disposed below the filter media and below the wall that is
           configured to whirl water flowing through the device; and an exit configured to permit
14         water to flow out of the housing, the exit including a ledge configured to generate a
           waterfall from water flowing out of the exit.

15
           16. A method for purifying water in a water garden or fish pond, the method comprising:
16         directing a flow of the water through an entrance into a chamber of a water garden filter
           device; whirling the water in the chamber to remove suspended particulates from the
17         flow, wherein the water in the chamber whirls above the entrance; trapping the
           particulates removed from the flow; providing filter media in the chamber, wherein the
18         filter media is disposed above the entrance; cleaning the water with the filter media; and
           expelling the flow of water over a ledge of an exit of the device to generate a waterfall.

19  23.     On information and belief, DEFENDANTS make, use, sell and offer for sale waterfall

20  filter systems under the name FLOWRANGER Waterfall Systems.  These filters, produced in

21  one or more sizes are sold individually and as part of "Advanced Water Garden Kits" and

22  "Advanced Pond Kits".    Attached hereto as Exhibit C are true and accurate copies of

COMPLAINT               6

photographs an exemplary FLOWRANGER system, model FR1500. These and any other infringing systems made, used, sold or offered for sale by either or both of DEFENDANTS are hereinafter referred to as the "accused products".

24. As discussed in the following paragraphs, Exhibit C hereto compares an exemplary accused product to claim 1 of the Russell '268 patent:

25. Exhibit C shows that the accused product contains A) a water garden filter device sized and configured for purifying water of a water garden or fish pond.

26. Exhibit C shows that the accused product contains B) a filter medium configured to clean the water flowing through the device.

27. Exhibit C shows that the accused product contains C) a housing configured to contain the filter media.

28. Exhibit C shows that such housing of the accused product contains D) a wall configured to whirl the water flowing through the device to remove suspended particulates from the flow due to impact of the water with the wall.

29. Exhibit C shows that the accused product contains E) a trap configured to collect the removed particulates.

30. Exhibit C shows that the accused product contains F) an entrance configured to permit water to flow into the housing, the entrance disposed below the filter media and below the wall that is configured to whirl water flowing through the device.

31. Exhibit C shows that the accused product contains G) an exit configured to permit water to flow out of the housing, the exit including a ledge configured to generate a waterfall from water flowing out of the exit.

COMPLAINT 7

32.     Thus, as exemplified in Exhibit C, the accused products contain, literally and/or equivalently, all the elements of at least claim 1 of the Russell '268 patent.

33.     The accused products also contain, literally and/or equivalently, all the elements of one or more other claims of the Russell '268 patent, including each of the independent claims.

34.     For example, the accused products also contain, literally and/or equivalently, all the elements of claims 24 and 25 of the Russell '268 patent.

35.     Claims 24 and 25 of the Russell '268 patent are directed to methods of purifying water for a water garden or fish pond that further includes cleaning the  filter media by backwashing the system while the media remains contained in the device, including in some instances directing a second flow of liquid through the filter media wherein the second flow flows through the exit of the device before the second flow contacts the filter media for the water garden or fish pond (manually, using valves or otherwise).

36.     In or about July 2005, Defendant TENNYSON visited the premises of Plaintiff RUSSELL WATERGARDENS FLAGSHIP STORE.

37.     At the time of the visit, Plaintiff RUSSELL WATERGARDENS FLAGSHIP STORE had numerous examples of PLAINTIFFS' backwashable HYDRO VORTEX$^{TM}$ waterfall filters in the store and on display in a display area outside the store building.

38.     At the time of the visit, Plaintiff RUSSELL WATERGARDENS FLAGSHIP STORE had at least one example of PLAINTIFFS' backwashable HYDRO VORTEX$^{TM}$ waterfall filter with the HYDROFLUSH$^{TM}$ option that backwashes the filter using a pipe that opens into the air above the filter in the display area outside the store building.

39.     During  such  visit,  Defendant  TENNYSON  spoke  with  one  or  more  employees  of

COMPLAINT                          8

GRAYBEAL JACKSON LLP
400 - 108TH AVENUE, SUITE 700
BELLEVUE, WASHINGTON 98004-5562
(425) 455-5575

Plaintiff RUSSELL WATERGARDENS FLAGSHIP STORE about the design and function, and was shown at least one example, of PLAINTIFFS' backwashable HYDRO VORTEX™ waterfall filters.  Exhibit D hereto is a true and accurate copy of photos and diagrams showing examples of PLAINTIFFS' backwashable HYDRO VORTEX™ waterfall filters with and without the HYDROFLUSH™ option.

40.     During such visit, Defendant TENNYSON received an explanation of how PLAINTIFFS' backwashable HYDROVORTEX™ waterfall filters worked.

41.     During such visit, Defendant TENNYSON took numerous photographs of PLAINTIFFS' HYDROVORTEX™ waterfall filters.

42.     During such visit, Defendant TENNYSON climbed on at least one display example PLAINTIFFS' backwashable HYDRO VORTEX™ waterfall filters and took photographs of it.

43.     PLAINTIFFS' HYDRO VORTEX™ waterfall filters, with or without the HYDROFLUSH™ option, embody all the elements of one or more of the claims of the Russell '268 patent.

44.     On information and belief, DEFENDANTS copied PLAINTIFFS' backwashable HYDRO VORTEX™ waterfall filters when DEFENDANTS made DEFENDANTS' accused devices.

45.     On information and belief not limited to the facts recited in paragraphs 1-44, DEFENDANTS willfully infringed, and continue to willfully infringe, the Russell '268 patent.

46.     On information and belief, PLAINTIFF would have made all the sales of product that DEFENDANTS made of DEFENDANTS' accused products.

COMPLAINT                          9

GRAYBEAL JACKSON LLP
400 - 108TH AVENUE, SUITE 700
BELLEVUE, WASHINGTON 98004-5562
(425) 455-5575

B.      DEFENDANTS' TENNYSON '841 PATENT

47.      On October 13, 2005, which is after Defendant TENNYSON visited Plaintiff RUSSELL

WATERGARDENS FLAGSHIP STORE in or about July, 2005, Defendant TENNYSON filed

the patent application that ultimately became the Tennyson '841 patent.

48.      On June 8, 2010, the United States Patent and Trademark Office issued the Tennyson

'841 patent.

49.      On information and belief, Defendant TENNYSON derived the subject matter of one or

more claims of the Tennyson '841 patent after Defendant TENNYSON visited PLAINTIFFS'

premises and learned about PLAINTIFFS' backwashable HYDRO VORTEX$^{TM}$ waterfall filters.

50.      On information and belief, Defendant TENNYSON copied one or more features of

PLAINTIFFS' backwashable HYDRO VORTEX$^{TM}$ waterfall filters in the application and claims

that ultimately became the Tennyson '841 patent.

51.      The independent claims of the Tennyson '841 patent read as follows:

1. An aerator system for an artificial pond comprising: an aerator housing defining an
aerator chamber and first, second, and third aerator housing ports; filter media arranged
within the aerator housing, where the filter media defines first and second portions of the
aerator chamber, where the first aerator housing port is in direct fluid communication
with the first portion of the aerator chamber, and the second and third aerator housing
ports are in direct fluid communication with the second portion of the aerator chamber; a
control valve array operatively connected to the first and second aerator housing ports;
whereby in a first mode, the control valve array allows a portion of the water flowing
through the aerator housing to bypass the filter media.

10. An aerator system for an artificial pond comprising: an aerator housing defining an
aerator chamber and first, second, third, and fourth aerator housing ports; filter media
arranged within the aerator housing, where the filter media defines first and second
portions of the aerator chamber, the first and fourth aerator housing ports are in direct
fluid communication with the first portion of the aerator chamber, and the second and
third aerator housing ports are in direct fluid communication with the second portion of
the aerator chamber; a control valve array operatively connected to the first and second
aerator housing ports; whereby in a first mode, the control valve array allows a portion of

COMPLAINT                    10

the water flowing through the aerator housing to bypass the filter media; and in a second mode, the control valve array allows water to flow into the aerator chamber through the second aerator housing port and out of the aerator chamber through the fourth aerator housing port.

15. An artificial pond water system comprising: a pond; a pump vault assembly arranged such that water in the pond flows into the pump vault; a pump arranged within the pump vault; an aerator housing defining an aerator chamber and first, second, and third aerator housing ports, where the third aerator housing port is arranged such that water flowing out of the aerator chamber through the third aerator housing port flows into the pond; filter media arranged within the aerator housing, where the filter media defines first and second portions of the aerator chamber, where the first aerator housing port is in direct fluid communication with the first portion of the aerator chamber, and the second and third aerator housing ports are in direct fluid communication with the second portion of the aerator chamber; a control valve array operatively connected between the pump and the first and second aerator housing ports; whereby in a first mode, the control valve array allows a portion of the water flowing through the aerator housing to bypass the filter media.

52.     The claims of the Tennyson '841 patent are not infringed by PLAINTIFFS' products.

53.     The claims of the Tennyson '841 patent are not infringed, for example, because PLAINTIFFS' products do not include one or more of an aerator chamber, a control valve array, or a second aerator housing port in direct fluid communication with the second portion of the aerator chamber.

54.     On information and belief, Defendant TENNYSON is not a sole and/or a true inventor of the Tennyson '841 patent.

55.     On information and belief, the Tennyson '841 patent is invalid and unenforceable for intentional failure to name one or more true inventors of the claimed subject matter of the Tennyson '841 patent.

56.     Neither John Russell nor anyone else associated with PLAINTIFFS is named as an inventor on the Tennyson '841 patent.

57.     Neither John Russell nor anyone else associated with PLAINTIFFS participated in any

GRAYBEAL JACKSON LLP
400 - 108TH AVENUE, SUITE 700
BELLEVUE, WASHINGTON 98004-5562
(425) 455-5575

1    manner with drafting, prosecution or issuance, etc., of the Tennyson '841 patent.

2    58.    On information and belief, the Tennyson '841 patent is invalid for failure to satisfy one or

3    more requirements of 35 USC § 101 et seq., including but not limited to the fact that, if the

4    Tennyson '841 patent is interpreted to include PLAINTIFFS' current products, then the Tennyson

5    '841 patent is anticipated by PLAINTIFFS products on sale or display before the invention (if

6    there was any "invention" by TENNYSON), and before the filing of the application that became

7    the Tennyson '841 patent.

8    59.    On information and belief, the Tennyson '841 patent is unenforceable for inequitable

9    conduct.

10

11   C.     DEFENDANTS'  UNFAIR  COMPETITION  ACTIONS  RELATED  TO  THE

12   TENNYSON '841 PATENT AND CERTAIN OTHER UNFAIR COMPETITION ACTS OF

13   DEFENDANTS

14   60.    On June 26, 2007, prior to issuance of the Tennyson '841 patent, Defendants

15   WATERFALL POND SUPPLY and TENNYSON, through their patent attorney, sent a letter to

16   PLAINTIFFS, Exhibit E hereto, alleging amongst other things, as follows:

17            It has recently come to the attention of Waterfall Pond Supply that your Company is
              manufacturing and selling a flow control system under the tradename Hydroflush that is
18            substantially identical to Waterfall Pond Supply's FLOW RANGER product. Please note
              that Waterfall Pond Supply has applied for a United States patent covering its FLOW
19            RANGER product. Once a patent issues, Waterfall Pond Supply intends to vigorously
              enforce its patent rights against anyone making, using, and/or selling the patented subject
20            matter.
              Please note that we believe that your Hydroflush system clearly infringes the patent that
21            we expect to issue based on Waterfall Pond Supply's patent application.

22   61.    DEFENDANTS' June 26, 2007 letter wrongfully accused PLAINTIFFS of infringement

COMPLAINT                        12

when PLAINTIFFS' products clearly do not infringe.

62.     DEFENDANTS' June 26, 2007 letter wrongfully accused PLAINTIFFS of infringement when DEFENDANTS knew that DEFENDANTS could not rightfully obtain any patent that could cover PLAINTIFFS's products since DEFENDANTS learned of backflushing a water filter from PLAINTIFFS.

63.     DEFENDANTS' June 26, 2007 letter wrongfully accused PLAINTIFFS of infringement when DEFENDANTS knew that DEFENDANTS could not rightfully obtain any patent that could cover PLAINTIFFS's products since PLAINTIFFS' products predated DEFENDANTS' patent filing date.

64.     On information and belief, DEFENDANTS intentionally sent their June 26, 2007 letter with knowledge it falsely accused infringement.

65.     DEFENDANTS' June 26, 2007 letter is wrongful, unfair and actionable and interfered with the business, business relations and contractual relations of PLAINTIFFS.

66.     DEFENDANTS' June 26, 2007 letter caused damage and harm to PLAINTIFFS.

67.     On information and belief, prior to, and at or about the time DEFENDANTS sent DEFENDANTS' June 26, 2007 letter, DEFENDANTS intentionally contacted numerous distributors, dealers, customers and sales entities of PLAINTIFFS and falsely stated that DEFENDANTS were already suing or would be suing PLAINTIFFS based on DEFENDANTS' (not yet issued) patent rights.

68.     On information and belief, as of the date of this Complaint, DEFENDANTS have never filed any lawsuit of any kind against either of the PLAINTIFFS.

69.     On information and belief, prior to, and at or about the time DEFENDANTS sent

COMPLAINT                    13

DEFENDANTS' June 26, 2007 letter, DEFENDANTS intentionally contacted numerous distributors, dealers, customers and sales entities of PLAINTIFFS and threatened that such entities cease doing business with PLAINTIFFS.

70.     On July 27, 2007, PLAINTIFFS sent DEFENDANTS' patent attorney a letter responding to DEFENDANTS' June 26, 2007 letter.   A true and accurate copy is attached hereto as Exhibit F.

71.     PLAINTIFFS' July 27, 2007 letter commented on DEFENDANTS' improper assertion of patent rights, advised DEFENDANTS and DEFENDANTS' patent attorney that DEFENDANTS could not be entitled to any patent based on the technology PLAINTIFFS taught to Defendant TENNYSON, and advised DEFENDANTS that PLAINTIFFS were aware of DEFENDANTS' wrongful actions regarding PLAINTIFFS' distributors, dealers, customers and sales entities and demanded such misconduct stop immediately:

> Your letter alleges that [DEFENDANT] Tennyson has or is about to have some form of patent right that should be of concern to [PLAINTIFFS]. Your letter provided the serial number but no other specific information as to the identity nor the content of the application, nor a copy of the application or its claims. We have not been able to find any pending patent application for Tennyson on the U.S. Patent and Trademark Office (USPTO) web site. Obviously, a bald accusation of patent infringement without any legitimate description of what infringes and why, and without any support, is not sustainable. …

> In addition, Russell Watergardens is not aware of any basis on which Tennyson could possibly sue it, including the fact that Russell Watergardens is not aware of any way in which Tennyson could be entitled to any patent relating to the back flush system in Russell Watergardens' HydroVortex since to the best of my client's knowledge Tennyson learned of the ability to back flush a waterfall filter at my client's premises (including Tennyson taking photographs of a back flushable waterfall filter) before Tennyson had developed any product of his own. Thus, it would appear that not only are your client's statements to third parties actionable, it appears that they may actually be fraudulent Moreover, this situation lends itself to the possibility that your letter, particularly given its lack of specificity and support and since it appears to be alleging rights under a patent

COMPLAINT                    14

that Tennyson did not invent, may itself constitute a form of actionable unfair competition and/or other tortious interference.

Accordingly, my client demands that Tennyson immediately stop any and all accusations to third parties relating to my client, Russell Watergardens, and any sort of lawsuit or patent rights that Tennyson may someday hope to have against Russell Watergardens.

72.    On information and belief, in or about late 2006, DEFENDANTS contacted PLAINTIFFS' then-largest authorized dealer, Exotic Aquatics in Redlands, CA, offering for sale DEFENDANTS' accused products.

73.    On information and belief, at least in part because of this contact, in or about January 2007 Exotic Aquatics terminated its Exclusive Authorized Dealer agreement with Russell Watergardens so it could sell DEFENDANTS' accused products, the FLOWRANGER waterfall filter (and other products not accused herein).

74.    On information and belief, in or about early 2007 DEFENDANTS contacted PLAINTIFFS' authorized dealer Tranquil Water Gardens in Cumberland, RI.

75.    On information and belief, DEFENDANTS stated to Tranquil Water Gardens words to the effect that PLAINTIFFS were infringing on DEFENDANTS' patent and that TENNYSON was in the process of suing PLAINTIFFS.

76.    On information and belief, DEFENDANTS told Tranquil Water Gardens that it should not handle PLAINTIFFS products otherwise Tranquil Water Gardens could also be named in the suit.

77.    As noted above, in early 2007 DEFENDANTS did not have any patent related to waterfall filters and were not in the process of suing PLAINTIFFS.

78.    On information and belief, DEFENDANTS contacted other distributors and/or dealers of PLAINTIFF relating to selling DEFENDANTS' accused products.

COMPLAINT                    15

79.     DEFENDANTS' actions relating to PLAINTIFFS' distributors, dealers, etc., caused

damage and harm to PLAINTIFFS including loss of sales, reputation and business relationships,

80.     On or about September 17, 2010, DEFENDANTS, through their attorney, sent a letter to

PLAINTIFFS, Exhibit G hereto, referring to DEFENDANTS' June 26, 2007 letter and alleging,

amongst other things, that PLAINTIFFS' HYDROFLUSH<sup>TM</sup> option to the HYDRO VORTEX™

waterfall filter infringes the Tennyson '841 Patent.

81.     DEFENDANTS' September 17, 2010 letter alleges, amongst other things, that

PLAINTIFFS' HYDROFLUSH<sup>TM</sup> option to the HYDRO VORTEX™ waterfall filter infringes

because:

> This system includes three portals, one of which allows water to flow up through a filter;
> a second that allows water to be fully or partially diverted from the first portal to a
> second portal on top of the filter to allow for back flushing (or diversion of some water
> from going through the filter), and a third portal that allows contaminants released from
> the back flushing to be removed from the filter.

82.     DEFENDANTS' September 17, 2010 letter wrongfully accuses PLAINTIFFS of

infringement when PLAINTIFFS' products clearly do not infringe.

83.     On information and belief, DEFENDANTS intentionally sent their September 17, 2010

letter with knowledge it wrongfully accused infringement.

84.     DEFENDANTS' September 17, 2010 letter is wrongful, unfair and actionable.

85.     DEFENDANTS' September 17, 2010 letter caused damage and harm to PLAINTIFFS.

D.     DEFENDANTS' FALSE ADVERTISING

86.     On information and belief, at least in or about April through August 2007,

DEFENDANTS ran ads in at least Water Garden News that claim that DEFENDANTS' accused

COMPLAINT                    16

products are "The Only TRUE back-washable waterfall filter."  Exhibit H hereto comprises true and accurate copies of four such April through August 2007 ads that ran in Water Garden News.

87.     On information and belief, other wording in the ads in Exhibit H as well as other communications by DEFENDANTS misrepresented that DEFENDANTS' accused products were the only back-washable waterfall filters on the market.

88.     At the time these ads ran, DEFENDANTS' accused products were not the only back-washable waterfall filters on the market, since PLAINTIFFS' back-washable HYDRO VORTEX$^{TM}$ and HYDROFLUSH$^{TM}$ products were already on the market.

89.     On information and belief, starting in at least about August 2008, DEFENDANTS ran ads in at least Water Garden News claiming that DEFENDANTS' accused products were "Introducing The Automated Backwashing System."  Exhibit I hereto comprises a true and accurate copy of an August 2008 ad that ran in Water Garden News.

90.     On information and belief, in or about August 2008, DEFENDANTS' did not offer any backwashing waterfall filter products comprising electrical, automated switching between filtering and backwashing modes.

91.     On information and belief, as of the date of the filing of this Complaint, DEFENDANTS' do not offer any backwashing waterfall filter products comprising electrical, automated switching between filtering and backwashing modes.

92.     On information and belief, DEFENDANTS' have never offered any backwashing waterfall filter products comprising electrical, automated switching between filtering and backwashing modes.

93.     On information and belief, prior to running at least the ad in Exhibit I, DEFENDANTS'

COMPLAINT                    17

learned that PLAINTIFFS were about to offer for sale a backwashing waterfall filter product comprising electrical, automated switching between filtering and backwashing modes.

94.     DEFENDANTS' ads materially misrepresented the nature, characteristics or qualities of DEFENDANTS' goods, services, or commercial activities.

95.     DEFENDANTS' ads were and are likely to confuse and/or harm consumers.

96.     On information and belief, DEFENDANTS conduct exhibits a repeated pattern of false statements and false advertising.

97.     On information and belief, DEFENDANTS knew their ads and statements were false.

98.     On information and belief, DEFENDANTS willfully and intentionally misrepresented the nature, characteristics, or qualities of DEFENDANTS' goods, services, or commercial activities.

99.     At least DEFENDANTS' April 2007 and May 2007 ads in Exhibit H (page 1-2 of the Exhibit) stated "the patented FLOWRANGER backwashing System".

100.    The Tennyson '841 patent was not issued until June 8, 2010.

101.    Although DEFENDANTS' ad in Exhibit H also stated "Patent Pending", there was no indication which statement was the accurate statement.

102.    At least DEFENDANTS' August 2008 ad in Exhibit I stated "patent pending" when DEFENDANTS knew or reasonably should have known that DEFENDANTS' accused products as depicted in the ad and offered for sale did not come within the scope of any claim then-pending in the application that ultimately became the Tennyson '841 patent.

103.    DEFENDANTS' ads materially misrepresented the nature, characteristics, qualities or sponsorship or authorization of DEFENDANTS' goods, services, or commercial activities.

104.    DEFENDANTS' ads were and are likely to confuse consumers as to the true nature of

GRAYBEAL JACKSON LLP
400 - 108TH AVENUE, SUITE 700
BELLEVUE, WASHINGTON 98004-5562
(425) 455-5575

1   DEFENDANTS' accused products.

2   105.   On information and belief, DEFENDANTS conduct exhibits a repeated pattern of false

3   statements and false advertising.

4   106.   On information and belief, DEFENDANTS knew their ads and statements were false.

5   107.   On information and belief, DEFENDANTS willfully and intentionally misrepresented the

6   nature, characteristics, or qualities of DEFENDANTS' goods, services, or commercial activities.

7

8   E.   DEFENDANTS' PATENT MISMARKING

9   108.   As noted above, DEFENDANTS' April 2007 and May 2007 ads in Exhibit H stated "the

10   patented FLOWRANGER backwashing system".

11   109.   The Tennyson '841 patent was not issued until June 8, 2010 so there was no "patented

12   FLOWRANGER backwashing system" at the time the ads in Exhibit H ran.

13   110.   As noted above, DEFENDANTS' August 2008 ad in Exhibit I stated "patent pending".

14   111.   DEFENDANTS' accused product in the August 2008 ad has a different configuration

15   than the products depicted in DEFENDANTS' April 2007 and May 2007 ads in Exhibit H.

16   112.   For example, DEFENDANTS' accused product in the August 2008 ad no longer

17   comprises the valve array depicted in DEFENDANTS' April 2007 and May 2007 ads in Exhibit

18   H.

19   113.   As noted above, DEFENDANTS knew or reasonably should have known that

20   DEFENDANTS' accused products as depicted in the ad in Exhibit I and offered for sale did not

21   come within the scope of any claim then-pending in the application that ultimately became the

22   Tennyson '841 patent.

COMPLAINT                    19

114.   For example, DEFENDANTS' accused products do not include a control valve array as recited in the then-pending claims.

115.   As shown in Exhibit C above, DEFENDANTS have at least affixed labels to DEFENDANTS' accused products containing the number of the Tennyson '841 patent (i.e., U.S. Patent No. 7,731,841).

116.   The claims of the Tennyson '841 patent clearly do not cover DEFENDANTS' accused products containing such labels.

117.   For example, DEFENDANTS' accused products do not include a control valve array as recited in the claims.

118.   On information and belief, DEFENDANTS knew or reasonably should have known that DEFENDANTS' accused products do not come within the scope of the Tennyson '841 patent.

119.   On information and belief, DEFENDANTS conduct exhibits a repeated pattern of patent mismarking.

120.   On information and belief, DEFENDANTS' statements were made and/or labels affixed to products for the purpose of deceiving the public.

## FIRST CAUSE OF ACTION

## INFRINGEMENT OF UNITED STATES PATENT NO. 7,425,268

121.   PLAINTIFFS reallege paragraphs 1 through 120 above as if fully set forth herein.

122.   PLAINTIFF RW DISTRIBUTING is the owner, including the owner of the right to sue for infringement, of duly and legally issued United States Patent No. 7,425,268.   As noted previously, a true and accurate copy of this patent is attached hereto as Exhibit A.

COMPLAINT                    20

123.   The Russell '268 patent is valid and enforceable.

124.   DEFENDANTS, jointly and severally, have infringed, and is infringing, the Russell '268 patent in violation of 35 USC § 271 et seq.

125.   DEFENDANTS, jointly and severally, knew, or should have known, of PLAINTIFFS' rights in the Russell '268 patent.

126.   DEFENDANTS' infringement of the Russell '268 patent, jointly and severally, has been intentional and deliberate, and constitutes willful infringement.

127.   PLAINTIFFS have suffered significant irreparable injury from such acts of infringement, and will continue to suffer such injury, unless DEFENDANTS, jointly and severally, are enjoined from making, using, selling or offering for sale products and methods infringing the Russell '268 patent.

128.   PLAINTIFFS has sustained and will continue to sustain substantial damages caused by such acts of infringement, including, without limitation, lost profits on sales lost to PLAINTIFFS because of the infringement.

129.   PLAINTIFFS are entitled to compensatory and enhanced damages, attorneys' fees and costs of suit incurred in connection with this action, and preliminary and permanent injunctive relief.


**SECOND CAUSE OF ACTION**

**DECLARATORY JUDGMENT THAT UNITED STATES PATENT NO. 7,731,841 IS**

**NOT INFRINGED, IS INVALID AND/OR IS UNENFORCEABLE**

130.   PLAINTIFFS reallege paragraphs 1 through 129 above as if fully set forth herein.

COMPLAINT                    21

GRAYBEAL JACKSON LLP
400 - 108TH AVENUE, SUITE 700
BELLEVUE, WASHINGTON 98004-5562
(425) 455-5575

131.   DEFENDANTS have accused PLAINTIFFS of infringing the Tennyson '841 patent more than once.  As noted previously, a true and accurate copy of this patent is attached hereto as Exhibit B.

132.   There is a real and actual controversy between the parties about the non-infringement, invalidity and unenforceability of the Tennyson '841 patent.

133.   PLAINTIFFS' accused HYDROFLUSH™ option to the HYDRO VORTEX™ products does not infringe the Tennyson '841 patent.

134.   The Tennyson '841 patent is invalid for failure to satisfy one or more requirements of 35 USC § 101 et seq.

135.   The Tennyson '841 patent is unenforceable.

136.   PLAINTIFFS are entitled to a declaratory judgment that United States Patent No. 7,731,841 is not infringed, is invalid and/or is unenforceable, to costs and attorneys' fees associated with the bringing of this action to establish the 7,731,841 patent is not infringed, is invalid and/or is unenforceable, and to related preliminary and permanent injunctive relief.


**THIRD CAUSE OF ACTION**

**FEDERAL FALSE ADVERTISING IN VIOLATION OF SECTION 43(a)(1)(B) OF THE**

**LANHAM ACT, 15 U.S.C. § 1125(a)(1)(B)**

137.   PLAINTIFFS reallege paragraphs 1 through 136 above as if fully set forth herein.

138.   DEFENDANTS, jointly and severally, have stated and advertised that DEFENDANTS' accused products are "The Only TRUE back-washable waterfall filter," are materially false statements that misrepresent the nature, characteristics and qualities of DEFENDANTS' accused

GRAYBEAL JACKSON LLP
400 - 108TH AVENUE, SUITE 700
BELLEVUE, WASHINGTON 98004-5562
(425) 455-5575

products. These are material misrepresentations upon which customers or potential customers have, and will rely. DEFENDANTS' actions therefore mislead and harm customers and consumers as well as damage PLAINTIFFS' sales, good name and reputation in violation of Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

139.    DEFENDANTS, jointly and severally, have stated and advertised that DEFENDANTS' accused products are "patented" prior to the issuance of the Tennyson '841 patent are materially false statements that misrepresent the nature, characteristics and qualities of DEFENDANTS' accused products. These are material misrepresentations upon which customers or potential customers have, and will rely. DEFENDANTS' actions therefore mislead and harm customers and consumers as well as damage PLAINTIFFS' sales, good name and reputation in violation of Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

140.    DEFENDANTS willfully and intentionally misrepresented the nature, characteristics or qualities of DEFENDANTS' goods, services, or commercial activities.

141.    PLAINTIFFS are entitled to compensatory, statutory and enhanced damages, attorneys' fees and costs of suit incurred in connection with this action, and preliminary and permanent injunctive relief.

## FOURTH CAUSE OF ACTION

## PATENT MISMARKING

142.    PLAINTIFFS reallege paragraphs 1 through 141 above as if fully set forth herein.

143.    DEFENDANTS, jointly and severally, have stated that DEFENDANTS' accused products are "patented" prior to the issuance of the Tennyson '841 patent.

COMPLAINT                           23

144.    DEFENDANTS, jointly and severally, have affixed labels to at least DEFENDANTS' accused products containing the number of the Tennyson '841 patent (i.e., U.S. Patent No. 7,731,841) even though DEFENDANTS knew or should have known that the claims of the Tennyson '841 patent clearly do not cover DEFENDANTS' accused products containing such labels.

145.    DEFENDANTS' statements were made and/or labels affixed to products for the purpose of deceiving the public.

146.    DEFENDANTS' statements constitute mismarking in violation of 35 USC § 292.

147.    PLAINTIFFS are entitled to statutory damages of $500 per violating article.


**FIFTH CAUSE OF ACTION**

**FEDERAL UNFAIR COMPETITION IN VIOLATION OF SECTION 43(a)(1)(A) OF**

**THE LANHAM ACT, 15 U.S.C. § 1125(a)(1)(A)**

148.    PLAINTIFFS reallege paragraphs 1 through 147 above as if fully set forth herein.

149.    DEFENDANTS, jointly and severally, have stated and advertised that DEFENDANTS' accused products are "The Only TRUE back-washable waterfall filter," and are "patented" prior to the issuance of the Tennyson '841 patent, are materially false statements that are likely to cause consumer confusion, mistake, or deception as to the approval of DEFENDANTS' accused products. DEFENDANTS' actions therefore mislead and harm customers and consumers as well as damage PLAINTIFFS' sales, good name and reputation in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

150.    DEFENDANTS, jointly and severally, have misrepresented various facts to distributors,

COMPLAINT                                24

dealers, customers and sales entities of PLAINTIFFS including but not limited to false assertions that DEFENDANTS are suing or going to sue based on not-yet-issued patents, which are materially false statements that are likely to cause consumer confusion, mistake, or deception as to the approval of DEFENDANTS' accused products. DEFENDANTS' actions therefore mislead and harm customers and consumers as well as damage PLAINTIFFS' sales, good name and reputation in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

151.    DEFENDANTS willfully and intentionally misrepresented the nature, characteristics or qualities of DEFENDANTS' goods, services, or commercial activities.

152.    PLAINTIFFS are entitled to compensatory, statutory and enhanced damages, attorneys' fees and costs of suit incurred in connection with this action, and preliminary and permanent injunctive relief.

## SIXTH CAUSE OF ACTION

### STATE FALSE ADVERTISING, RCW 9.04.010 AND RCW 9.04.050

153.    PLAINTIFFS reallege paragraphs 1 through 152 above as if fully set forth herein.

154.    DEFENDANTS' acts, jointly and severally, as described in paragraphs 16 through 120 above, demonstrate that DEFENDANTS have published, disseminated or displayed, or caused to be published, disseminated or displayed, one or more instances of false, deceptive or misleading advertising, with knowledge of the facts which render the advertising false, deceptive or misleading.

155.    DEFENDANTS' acts, jointly and severally, were for business, trade or commercial purposes or for the purpose of inducing, or likely to induce, directly or indirectly, the public to

COMPLAINT                    25

purchase, consume, lease, dispose of, utilize or sell at least DEFENDANTS' accused products or cease to purchase at least PLAINTIFFS' HYDRO VORTEX™ products with or without the HYDROFLUSH™ option or to enter into or cease an obligation or transaction relating thereto.

156.   DEFENDANTS' acts, jointly and severally, violate the Washington State False Advertising statutes, RCW 9.04.010 and RCW 9.04.050.

157.   PLAINTIFFS are entitled to compensatory, statutory and enhanced damages, attorneys' fees and costs of suit incurred in connection with this action, and preliminary and permanent injunctive relief.

## SEVENTH CAUSE OF ACTION

## INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS

158.   PLAINTIFFS reallege paragraphs 1 through 157 above as if fully set forth herein.

159.   DEFENDANTS' actions described in paragraphs 16 through 120 above, jointly and severally, intentionally and wrongfully caused one or more of PLAINTIFFS' distributors, dealers, customers or sales entities to terminate or violate their contracts with PLAINTIFFS.

160.   DEFENDANTS' actions harmed PLAINTIFFS' sales, reputation, ability to do business, and ability to expand their businesses.

161.   PLAINTIFFS are entitled to compensatory and enhanced damages, attorneys' fees and costs of suit incurred in connection with this action, and preliminary and permanent injunctive relief.

COMPLAINT                    26

1

**EIGHTH CAUSE OF ACTION**

2

**INTENTIONAL INTERFERENCE WITH BUSINESS RELATIONS**

3

162.   PLAINTIFFS reallege paragraphs 1 through 161 above as if fully set forth herein.

4

163.   DEFENDANTS' actions described in paragraphs 16 through 120 above, jointly and

5

severally, intentionally and wrongfully interfered with PLAINTIFFS' business relations with one

6

or more of PLAINTIFFS' distributors, dealers, customers and sales.

7

164.   DEFENDANTS' actions harmed PLAINTIFFS' sales, reputation, ability to do business,

8

and ability to expand their businesses.

9

165.   PLAINTIFFS are entitled to compensatory and enhanced damages, attorneys' fees and

10

costs of suit incurred in connection with this action, and preliminary and permanent injunctive

11

relief.

12

13

**NINTH CAUSE OF ACTION**

14

**STATE LAW UNFAIR COMPEITION, RCW 19.86.020**

15

166.   PLAINTIFFS reallege paragraphs 1 through 165 above as if fully set forth herein.

16

167.   DEFENDANTS' actions described in paragraphs 16 through 120 above, jointly and

17

severally, constitute unfair methods of competition and unfair or deceptive acts or practices in

18

the conduct of any trade or commerce.

19

168.   PLAINTIFFS are entitled to compensatory, statutory and enhanced damages, attorneys'

20

fees and costs of suit incurred in connection with this action, and preliminary and permanent

21

injunctive relief.

22

COMPLAINT                    27

GRAYBEAL JACKSON LLP
400 - 108TH AVENUE, SUITE 700
BELLEVUE, WASHINGTON 98004-5562
(425) 455-5575

**PRAYER FOR RELIEF**

WHEREFORE, PLAINTIFFS pray for relief as follows:

PLAINTIFFS reallege paragraphs 1 through 168 above as if fully set forth herein.

1.      For a determination that the Russell '268 patent is valid and enforceable and that DEFENDANTS WATERFALL POND SUPPLY and TENNYSON, jointly and severally, infringe, literally or equivalently, one or more claims of the Russell '268 patent.

2.      For preliminary and permanent injunctions prohibiting DEFENDANTS WATERFALL POND SUPPLY and TENNYSON, jointly and severally, including their directors, officers, employees, agents, affiliates and/or any others working in concert with them, from infringing the Russell '268 patent.

3.      For temporary, preliminary and permanent injunctions ordering DEFENDANTS to, *inter alia,* immediately cease all manufacture, distribution and sale of the DEFENDANTS' products embodying the Russell '268 patent;

4.      The Court order a recall of all of the DEFENDANTS' accused products currently in the marketplace;

5.      For an award to PLAINTIFFS of its lost profits and any and all other damages it has suffered or to which it may be entitled, in an amount of at least $1,000,000 as may be proved at trial or otherwise.

6.      For an award of prejudgment interest on the monetary damages awarded to PLAINTIFFS, pursuant to 35 U.S.C. § 284, and/or as otherwise permitted by law.

7.      For an award of trebled damages under 35 U.S.C. § 284, and/or as otherwise permitted by

COMPLAINT                                28

GRAYBEAL JACKSON LLP
400 - 108TH AVENUE, SUITE 700
BELLEVUE, WASHINGTON 98004-5562
(425) 455-5575

law.

8.     For a declaratory judgment, pursuant to 28 U.S.C. § 2201(a), determining that the Tennyson '841 patent is (a) invalid, (b) unenforceable for inequitable conduct, and (c) not infringed by PLAINTIFFS' products.

9.     For an award of attorneys' fees pursuant to 35 U.S.C. § 285 and/or as otherwise permitted by law;

10.    For a judgment that DEFENDANTS WATERFALL POND SUPPLY and TENNYSON, jointly and severally, have engaged in patent mismarking in violation of 35 USC § 292.

11.    For an award to PLAINTIFFS of statutory damages of $500 per violating article for such patent mismarking.

12.    The Court enter judgment that DEFENDANTS WATERFALL POND SUPPLY and TENNYSON, jointly and severally, as a result of their willful, deliberate, and materially false statements have engaged in false advertising in violation of Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

13.    The Court enter judgment that DEFENDANTS WATERFALL POND SUPPLY and TENNYSON, jointly and severally, as a result of their willful, deliberate, and materially false statements have engaged in federal unfair competition in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

14.    The Court enter judgment that DEFENDANTS WATERFALL POND SUPPLY and TENNYSON, jointly and severally, have wrongfully, intentionally interfered with PLAINTIFFS' contractual relations.

15.    The Court enter judgment that DEFENDANTS WATERFALL POND SUPPLY and

COMPLAINT                    29

TENNYSON, jointly and severally, have wrongfully, intentionally interfered with PLAINTIFFS' business relations.

16.     The Court enter judgment that DEFENDANTS WATERFALL POND SUPPLY and TENNYSON, jointly and severally, have wrongfully, intentionally competed unfairly in violation of RCW 19.86.020.

17.     With regard to the false advertising, unfair competition and tort causes of action, the Court enter judgment regarding DEFENDANTS WATERFALL POND SUPPLY and TENNYSON, jointly and severally, as follows:

A.      The Court enter judgment finding that this is an exceptional case;

B.      The Court issue temporary, preliminary, and permanent injunctions ordering DEFENDANTS WATERFALL POND SUPPLY and TENNYSON, jointly and severally, to, *inter alia,* immediately cease all distribution and dissemination of advertisements stating that DEFENDANTS' accused products are the only true back-washable water filters and any colorable facsimile of such statement;

C.      The Court order a recall of all of the DEFENDANTS' advertising, websites, and the like currently in the marketplace containing any false or misleading statement described herein or otherwise proven during this litigation;

D.      The Court order DEFENDANTS WATERFALL POND SUPPLY and TENNYSON, jointly and severally, to engage in a program of corrective advertising, satisfactory to PLAINTIFFS, to ameliorate the false and misleading information that DEFENDANTS have promulgated;

COMPLAINT                    30

E.      The Court grant an award of damages in an amount sufficient to compensate PLAINTIFFS for injury it has sustained as a consequence of DEFENDANTS' unlawful acts;

F.      The Court grant an award of enhanced and/or treble damages as appropriate;

G.      The Court grant an award of punitive damages in an amount sufficient to punish and deter DEFENDANTS from engaging in further knowing acts of unfair competition;

H.      The Court grant the reasonable attorneys' fees PLAINTIFFS incurs in connection with this action; and

18.   For costs of this lawsuit.

19.   For such further other, different and/or additional relief as the Court deems just and equitable.


        DATED this 8th day of October, 2010.

                                        Respectfully submitted,

                                        s/ Joshua King
                                        Joshua King, WSBA #22244
                                        Graybeal Jackson LLP
                                        Attorneys for PLAINTIFFS
                                        RW DISTRIBUTING, INC. and
                                        RUSSELL WATERGARDENS FLAGSHIP
                                        STORE, INC.

GRAYBEAL JACKSON LLP
400 - 108TH AVENUE, SUITE 700
BELLEVUE, WASHINGTON 98004-5562
(425) 455-5575